834 So.2d 344 (2003)
Luc Patrick ALEXANDRE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-976.
District Court of Appeal of Florida, Fourth District.
January 8, 2003.
*345 John H. Lipinski of the Law Office of John H. Lipinski, Miami, for appellant.
Charlie Crist, Attorney General, Tallahassee, and Sue-Ellen Kenny, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
Alexandre was convicted of burglary of an occupied dwelling. We affirm as to all issues, but address only that of an erroneous jury instruction.
The record reflects that Charmaine Dawkins, her children, and her boyfriend, Bernard, were home when there was a knock at the door. Dawkins opened the door after a voice identified himself only as "Mike." Two individuals entered, one pulled out a gun, and said "Bernard." Bernard got up and ran out the back door into the backyard. Dawkins heard two gunshots being fired as the man with the gun and the second individual ran after Bernard out the back door. She also saw two other men on her back patio.
A neighbor, Nolly Smart, testified to seeing two men leave a green Toyota Celica and walk to Dawkins' apartment. He saw one man knock on Dawkins' door while the other stood behind it. He heard the door open and then heard gunshots. A few moments later, he saw the two men emerge from the side of the house. At that time, Smart overheard one of the men say that he was shot. He got in his car to follow the men and found Alexandre laying in the road bleeding. Smart identified him as one of the men who entered the apartment.
Dawkins had noticed a green Celica with four passengers in her parking lot earlier. Officer Cabrera spotted the Celica leaving the area. Cabrera detained the vehicle and the three occupants inside. The neighbor identified the individuals as participants in the incident. Flex cuffs were found under the car and duct tape was found in the car.
In a statement to the police, Alexandre stated that he had gotten a ride to Fort *346 Lauderdale from Miami in a green Toyota with three men he knew from the neighborhood. He did not remember entering the area but said he saw two men with guns standing by the front door of the apartment. He claimed to have climbed over a wall into the Dawkins patio where he was shot.
At trial, Alexandre told a different story. He testified that a friend had dropped him off so that he could look for his cousin. Alexandre claimed to have been walking down the sidewalk when he heard gunshots. He jumped a wall and ended up inside the patio. He remembered getting shot multiple times.
The trial court instructed the jury:
Now as to Count I, before you can find the Defendant guilty of burglary, the State must prove the following three elements beyond a reasonable doubt.
Element number one, the Defendant entered or remained in a structure owned by or in the possession of Charmaine Dawkins. Element number two, the Defendant did not have the permission or consent of Charmaine Dawkins, or anyone authorized to act for her, to enter or remain in the structure at the time.
Element number three, at the time of entering or remaining in the structure the Defendant had a fully formed conscious intent to commit an offense in that structure ....
* * *
Even though an unlawful entering or remaining in a structure is proved, if the evidence does not establish that it was done with intent to commit a crime, the Defendant must be found not guilty.
The trial court erred in instructing the jury that "remaining in" a dwelling can also constitute burglary, as there is no evidence that a defendant was given consent to enter. However, no court has declared such error to be fundamental error, per se. This court has recognized that whether the error is fundamental depends on the facts of the individual case. See Couzo v. State, 830 So.2d 177 (Fla. 4th DCA 2002); Miller v. State, 828 So.2d 445 (Fla. 4th DCA 2002); Johnekins v. State, 823 So.2d 253 (Fla. 3d DCA 2002). Based on the facts of this case, the error was not fundamental and does not warrant reversal.
In Florida, burglary of a dwelling is committed in two different ways: (1) by entering a dwelling without permission with an intent to commit an offense; or (2) by remaining in a dwelling with an intent to commit an offense. § 810.02(1), Fla. Stat. (2001). The "remaining in" language applies only in situations where the accused remains in a dwelling of another surreptitiously. Delgado v. State, 776 So.2d 233, 240 (Fla.2000)[1]. Here, the facts did not support a "surreptitious remaining" and so the remaining in language did not apply and should not have been included in the instruction.
It is undisputed that if Alexandre was one of the men who entered the apartment and patio, his entry was done stealthily. There was no objection to the trial court's instruction and the error in giving *347 that instruction is not fundamental error where there is no plausible analysis under which the jury could have concluded that Alexandre entered the victim's premises without criminal intent and only formed a criminal intent while "remaining in" the apartment. See Miller, 828 So.2d at 448; Johnekins, 823 So.2d at 258.
Here, there is no plausible way the jury could have concluded that Alexandre, who was seen lurking at the door of the victim's apartment, formed the intent while he was "remaining in" the premises. The testimony was that the gunman, and a second individual identified as Alexandre, entered the apartment and immediately began firing as they ran through the apartment and out the back door, chasing the victim. There was no danger in this case that the jury might have concluded that intent was formed after entry.
Therefore, as in Couzo, Miller, and Johnekins, here, the inclusion of the "remaining in" part of the burglary instruction was mere surplusage and not fundamental error.
HAZOURI and MAY, JJ., concur.
NOTES
[1] The 2001 legislature amended the burglary statute with the intent of overturning Delgado by the enactment of section 810.015, Fla. Stat. The statute contains a provision making it retroactive February 2000. The events in this case appear to fall within that window as they occurred in April 2000 and so, if valid, Delgado would appear to no longer govern the instant case. The supreme court, however, has yet to formally address the retroactive effect of the statute, and because neither party on appeal addresses it and we affirm on other grounds, we also decline to address the issue.